IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ELIJAH PITTMAN,

           Petitioner,

v.

STATE OF NEW JERSEY, et al.

           Respondents.

HONORABLE JOHN M. VAZQUEZ

Civil Action
No. 15-5546 (JMV)

**OPINION**

**VAZQUEZ, District Judge:**

## I.    INTRODUCTION

Petitioner, Elijah Pittman, has submitted a *pro se* amended petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  (Am. Pet., ECF No. 5.)  For the reasons stated herein, the

amended petition shall be denied and no certificate of appealability shall issue.

## II.    BACKGROUND

The New Jersey Superior Court, Appellate Division, summarized the facts underlying

Petitioner's conviction as follows:[1]

> According to the State's proofs, at around 7:30 p.m. on August 22,
> 2006, while still daylight with clear weather, Union Township
> Police Officer Michael Wittevrongel was monitoring eastbound
> Route 22 traffic in a marked patrol car parked about ten feet away
> in a lot perpendicular to the roadway.  The officer noticed a Chrysler
> Fifth Avenue approaching in the left lane with no front license plate,
> but a New Jersey license plate on the back.  Wittevrongel focused
> solely on this car as it passed by at about forty to forty-five miles
> per hour, paying particular attention because its driver's side door
> lock was damaged, indicating that it could have been stolen.  At the

---

[1]  State court factual findings are presumed correct unless rebutted by clear and convincing
evidence.  *See* 28 U.S.C. § 2254(e)(1).  As Petitioner has not rebutted the factual findings of the
Superior Court of New Jersey by clear and convincing evidence, this Court relies on those
findings.

same time, Wittevrongel observed a male driver and a female passenger.

Wittevrongel ran the number on the rear license plate and found that it was not registered to that vehicle or any other. As a result, he radioed two other officers in the area, David Roman and Walter Stinner, for assistance. Wittevrongel then pulled out onto Route 22 in pursuit, losing sight of the Chrysler for no more than thirty seconds. He eventually caught up to the Chrysler near the Lowes Shopping Center on Route 22, where he saw his fellow officers pull out from the Lowes' parking lot, in their police cruiser, activate their lights and sirens, and signal for [Petitioner] to stop. Wittevrongel did the same, taking over as the primary unit in pursuit, only losing sight of the vehicle for an instant just before it ultimately crashed a few minutes later. While in pursuit, Officer Stinner also observed that the driver was male and the passenger, female.

With the police vehicles following, the Chrysler accelerated to about seventy miles per hour in the forty-five mile per hour speed zone, "weaving in and out of traffic," driving erratically, and suddenly "pull[ing] from the left lane, clear across the right lane of traffic, and right off the [exit] ramp." By then, the officers had been pursuing the vehicle for approximately 3.3 miles. When Wittevrongel reached the top of the exit ramp, he saw that the Chrysler -- which he lost sight of for only "a fraction of a second" when it shot down the ramp -- had rear-ended another vehicle, a Saturn, at a stop sign at the bottom of the ramp. The impact forced the Saturn all the way across the street and into a parking lot where it collided with a tractor trailer.

The Chrysler had sustained heavy front-end damage and was still smoking and rolling the wrong way down a one-way street as the passenger remained inside while the driver attempted to exit, despite the fact that his door would not open. Wittevrongel, after quickly checking that the driver of the Saturn was all right, used his police cruiser to block the Chrysler from moving any further. Inside that vehicle was [Petitioner], in the driver's seat, along with a passenger, [Petitioner's] cousin Nicole Pittman. [Petitioner], who was the same person Wittevrongel saw in the driver's seat when he first observed the vehicle on Route 22,[2] was then placed under arrest. Carol McBride, the driver of the Saturn vehicle, sustained injuries to her

---

[2] At trial, Wittevrongel explained that he did not include a description of the driver of the car in his report because "[i]t was the same person I saw originally that was behind the wheel when the chase ended. I felt there was no need."

neck, back, and shoulders that left her, more than a year later, with
continuing pain and still unable to drive.

*State v. Pittman*, No. A-4846-08T4, 2010 WL 2090047, at *1 (N.J. Super. Ct. App. Div. May 26,
2010) (footnote in original).

Petitioner's trial proceedings were conducted before the Honorable Joseph P. Donohue,
J.S.C., on September 25 and 26, 2007.  (*See* Sept. 25 and 26, 2007 Trial Trs., ECF Nos. 13-20
and 13-21.)  The only individuals who testified at trial were Ms. McBride and Officers
Wittevrongel and Stinner; all three testified as State's witnesses.  (*See* Sept. 26, 2007 Trial Tr.,
ECF No. 13-21.)

On September 26, 2007, the jury found Petitioner guilty of: (i) second-degree eluding,
N.J. Stat. Ann. § 2C:29-2b; and (ii) second-degree aggravated assault, N.J. Stat. Ann. § 2C:12-
1b(6).  *Pittman*, 2010 WL 2090047, at *1.  On July 24, 2008, Judge Donohue sentenced
Petitioner "to six years in prison with a two-year period of parole ineligibility [on the eluding
conviction and] a consecutive eight-year term with an eighty-five percent parole ineligibility
period [on the aggravated assault conviction.]"  *Id.*  (*See also* July 24, 2008 Sentencing Tr., ECF
No. 13-22.)

The Appellate Division affirmed Petitioner's conviction and sentence on direct appeal on
May 26, 2010.  *Pittman*, 2010 WL 2090047, at *1.  The New Jersey Supreme Court denied
certification of Petitioner's direct appeal on October 7, 2010.  *State v. Pittman*, 6 A.3d 441 (N.J.
2010) (table).

On or about November 12, 2010, Petitioner filed an application for post-conviction relief
("PCR") in the Superior Court of New Jersey (hereinafter, the "PCR court").  (*See, e.g.*, Aug. 20,
2012 Statement of Reasons Denying PCR, ECF No. 13-15 at PageID: 449.)  Judge Donohue was
the PCR court judge.  (*See, e.g.*, Aug. 20, 2012 Order Denying PCR, ECF No. 13-15 at PageID:

448.)  Petitioner argued that he received ineffective assistance of counsel because, among other

things, his trial counsel (1) failed to "investigate damage to the [unmarked police vehicle, 'TAC

3', operated by Officers Roman and Stinner] and [radio] transmission records[;]" (2) did not

"consider that there was no plausible factual scenario in which Officer Wittevrongel could have

identified [Petitioner;]" and (3) "failed to investigate racial profiling or selective prosecution."

(*See*, *e.g.*, ECF No. 13-15 at PageID: 449.)

On or about February 13, 2012, Petitioner filed a motion in the PCR court requesting,

*inter alia*, the following additional, post-trial discovery:[3] (1) "[c]opies of all communications

between the police vehicles and headquarters (dispatch/transmissions and [mobile data computer

("MDR") records;]" (ii) "[c]opies of all records related to the damage sustained by [TAC 3],

including but not limited to towing and repairs[;]" and (iii) [a]n *in camera* inspection of the

personnel files of the police officers involved in this matter and disclosure to Petitioner of any

complaint of racial profiling or selective prosecution."  (*See* Pet'r's Feb. 13, 2012 Notice of

Mot., ECF No. 13-15 at PageID: 379-80; *accord* Pet'r's Mar. 17, 2012 Letter Br., ECF No. 13-

15 at PageID: 404-06.)  Petitioner claimed that this discovery was needed to substantiate his

ineffective assistance of counsel claims.  (*Id.*)  The PCR court held a hearing on Petitioner's

motion for post-trial discovery on April 20, 2012.  (Apr. 20, 2012 Discovery Mot. Hr'g Tr., ECF

No. 13-24.)  The same day, the PCR court issued an order formally denying the request.  (ECF

No. 13-11 at PageID: 303.)

---

[3]  By way of that motion, Petitioner also sought to recuse Judge Donohue from the PCR matter. (*See* ECF No. 13-15, at at PageID: 379-80.)  The PCR court held a hearing on the recusal portion of Petitioner's motion on March 16, 2012.  (Mar. 16, 2012 Mot. Hr'g Tr., ECF No. 13-23.)  On March 19, 2012, the PCR court executed an order formally denying Petitioner's request to recuse Judge Donohue.  (ECF No. 13-7.)

Thereafter, on August 10, 2012, the PCR court held a hearing on the merits of Petitioner's PCR application.  (Aug. 10, 2012 Hr'g Tr., ECF No. 13-25.)  On August 20, 2012, the PCR court entered an order formally denying Petitioner's PCR application.  (ECF No. 13-15 at PageID: 448.)  The PCR court's denial was based on the reasons it placed on the record on August 10, 2012 (*see* Aug. 10, 2012 Hr'g Tr. 21-28, ECF No. 13-25), and the additional reasons it detailed in the "Statement of Reasons Denying PCR" appended to the PCR court's April 20th order.  (ECF No. 13-15 at PageID: 449-52.)

The Appellate Division affirmed the denial of Petitioner's PCR petition on March 9, 2015.  *State v. Pittman*, No. A-1383-12T4, 2014 WL 8086797, at *1 (N.J. Super. Ct. App. Div. Mar. 9, 2015).  The New Jersey Supreme Court denied certification of Petitioner's PCR appeal on June 19, 2015.  *State v. Pittman*, 116 A.3d 1071 (N.J. 2015) (table).

Petitioner initiated this § 2254 action on July 14, 2015.  (ECF No. 1.)  Petitioner filed his amended petition on August 14, 2015, asserting four grounds for relief.  (ECF No. 5.)  Respondents submitted their answer on February 29, 2016.  (ECF No. 13.)  Petitioner filed a reply on March 9, 2016.[4]  (ECF No. 15.)

---

[4]  By way of that reply, Petitioner also requested that this Court appoint him counsel.  (*Id.* at 3.)  Petitioner's request for counsel is denied.  The Court notes that even if Petitioner made this request before formal briefing in this matter was completed, he has neither a statutory nor constitutional right to the appointment of counsel.  *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *cert. denied*, 503 U.S. 988 (1992) ("there is no 'automatic' constitutional right to counsel in federal habeas corpus proceedings"), *superseded on other grounds by statute*, 28 U.S.C. § 2254.  A district court may, nonetheless, appoint counsel for a habeas petitioner where the petitioner shows that he is indigent and "the court determines that the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  This determination, in turn, requires the Court to consider, *inter alia*, the complexity of the factual and legal issues in Petitioner's case.  *Reese*, 946 F.2d at 263-64.  Here, although Petitioner has demonstrated his indigency (*see* Aug. 26, 2015 Order, ECF No. 6), the factual and legal issues in this habeas matter remain "straightforward and capable of resolution on the record."  *Ferguson v. Jones*, 905 F.2d 211, 214 (8th Cir. 1990).  Indeed, this Court's review of the merits of Petitioner's habeas petition under 28 U.S.C. § 2254(d) is limited to whether the State courts' adjudications "resulted in a decision

### III.   STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Petitioner has the burden of establishing each of his claims.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

28 U.S.C. § 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Where a state court adjudicated petitioner's federal claim on the merits,[5] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was

---

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d)(1)-(2).  The record of the relevant state court proceedings has provided this Court with the information needed to perform this review.

[5]  "For the purposes of Section 2254(d), a claim has been adjudicated on the merits in State court proceedings when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  *See Harrington v. Richter*, 562 U.S. 86, 98, 100 (2011).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" a Supreme Court holding within § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  *Williams*, 529 U.S. at 405–06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  With regard to § 2254(d)(1), a federal court must confine its examination to evidence in the record.  *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of AEDPA apply.  First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005); *see also Blankenship v. Hall*, 542 F.3d 1253, 1272 (11th Cir. 2008) (state courts' "implicit findings of fact are entitled to deference under AEDPA to the same extent as explicit findings of fact"), *cert. denied*, 131 S. Ct. 1041 (2011). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, "a petitioner must 'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002) (quoting *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002))); *see also Garvey v. Phelps*, 840 F. Supp. 2d 782, 785 (D. Del. 2012) ("A petitioner satisfies the exhaustion requirement by 'fairly presenting' the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits."). "This requirement ensures that state courts have an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Leyva*, 504 F.3d at 365 (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

To the extent that Petitioner's constitutional claims are unexhausted, this Court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("because [this court] will deny all of [petitioner's] claims on the

merits, [it] need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), [this court] may reject claims on the merits even though they were not properly exhausted, and [this court will] take that approach here."). "Where the state court has not addressed the merits of a claim . . . , then [§ 2254's] deferential standard of review does not apply and [this Court] instead review[s] the claim *de novo*." *Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011) (citing *Porter v. McCollum*, 558 U.S. 30, 39 (2009)). This Court "nevertheless must presume that state-court factual findings are correct unless the presumption is rebutted by clear and convincing evidence." *Id.* (citing *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); 28 U.S.C. § 2254(e)(1)); *see also Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014), *cert. denied sub nom Robinson v. Wetzel*, 136 S. Ct. 53 (2015)).

## IV.   ANALYSIS

Petitioner presents four "grounds" in his amended habeas petition:

> Ground One: The discovery will show that the officers racial[ly] profiled me and the judge and prosecutor know that. That's why he den[ied] me the discovery because it will show what really happen[ed]. So that [is] how the [state] courts violat[ed] my constution[al] rights. And I submitted a document to the [state] courts . . . showing that the officer wasn't telling the truth on what time he checked the license plate. He said 7:30pm[;] the paper work I have show[s] 8:38pm.

> Ground Two: The dispatch transmission report and towing record and repair record will support my claim of being innocen[t]. I will show that the judge, prosecutor, and the officers in my case cover[ed] up what had happen[ed] in my case and the "MDC" computer show[s] that the officers didn't check the license plate at 7:30pm like he testif[ied] to[;] the "MDC" computer show[s] it was 8:38pm.

> Ground Three: If the jury [had known] about the dispatch transmission report and towing records and repair record and the officers not telling the truth about the time they check[ed] the license, the outcome of my trial would have been different.

> Ground Four: The dispatch transmission report and towing record and repair record will support my claim of being innocen[t.]  I just need the [District Court] to review my case to see how my constitution[al] rights [were] violated.

(Am. Pet., ECF No. 5.)

Petitioner does not refer to any specific constitutional provisions or cite to any case law in support of the foregoing grounds.  There is also significant factual overlap underlying each of these the claims.  Based on these considerations, this Court construes Petitioner's habeas claims as follows: first, that Officer Wittevrongel falsely testified that he ran Petitioner's license plate at 7:30pm, as evidenced by discovery already in Petitioner's possession demonstrating that Petitioner's license plate was checked at 8:38pm; second, that the PCR court improperly denied his motion for additional post-trial discovery; third, that if Petitioner obtained that discovery, he would have been able to show that he is actually innocent of the crimes charged, that he was only pulled over as a result of racial profiling, and that the jury would have acquitted him, and; fourth, that the assistant prosecutor and the trial judge were aware that Petitioner was pursued and arrested by Officers Wittevrongel, Roman, and Stinner as a result of racial profiling, and that these individuals engaged in a collective effort to cover up this fact.[6]

Initially, this Court notes that Petitioner never advanced any of the above-identified claims, *per se*, during his state court proceedings.  Indeed, the primary argument advanced by Petitioner during his PCR proceedings was that he received ineffective assistance of counsel. Petitioner in no way asserts that he received ineffective assistance of counsel in the current

---

[6]  Petitioner's assertion that the judge, assistant prosecutor, and Union Township police officers engaged in a concerted effort to prevent him from obtaining post-trial discovery does not appear to have been raised as an issue during state court proceedings.  Instead, it appears that Petitioner is now raising this claim for the first time on habeas review.

habeas matter.  That said, and as further detailed, *infra*, the record makes clear that Petitioner

nonetheless raised many of his present habeas assertions to the state courts, notwithstanding that

Petitioner raised those claims in support of his then-overarching argument that he received

ineffective assistance of counsel.  As a result, the PCR court and the Appellate Division provided

significant, substantive analysis on the first, second, and third claims listed above, albeit utilizing

the ineffective assistance of counsel analysis set forth in *Strickland v. Washington*, 466 U.S. 668

(1984).  Although this Court finds the decisions of the state courts to be instructive, in an

abundance of caution, this Court will nonetheless review all of Petitioner's claims *de novo*.[7]

*Breakiron*, 642 F.3d at 131 ("Where the state court has not addressed the merits of a claim . . . ,

then [§ 2254's] deferential standard of review does not apply and [this Court] instead review[s]

the claim *de novo*."); *see also Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).  Yet, this

Court still must presume that the unrebutted factual findings of the state court are correct.

*Breakiron*, 642 F.3d at 131 (state court factual findings are presumed correct when reviewing the

merits of a habeas claim, regardless of whether that claim is reviewed *de novo* or under

AEDPA's more deferential standard of review) (citations omitted).

> **i.** **The Relevant Rulings of the State Court**

As noted above, Petitioner argued to the PCR court, *inter alia*, that his trial counsel failed

to investigate damage to the unmarked police vehicle, TAC 3, operated by Officers Roman and

Stinner; failed to review the relevant radio transmission records between the Union County

---

[7] This standard of review is different than the deferential standard of review AEDPA requires
for habeas claims that have been fairly presented and properly exhausted in the state courts.
Indeed when "the state court has not reached the merits of a claim thereafter presented to a
federal habeas court, the deferential standards provided by AEDPA . . . do not apply."  *Appel v.
Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  "In such an instance, the federal habeas court must
conduct a *de novo* review over pure legal questions and mixed questions of law and fact, as a
court would have done prior to the enactment of AEDPA."  *Id.*

police officers; failed to appropriately address the implausibility of Officer Wittevrongel's purported identification of him; and failed to investigate whether Petitioner was the victim of racial profiling or selective prosecution. (*See, e.g.*, Aug. 20, 2012 Statement of Reasons Denying PCR, ECF No. 13-15 at PageID: 449.) Petitioner also sought to have the PCR court order the State to produce copies of (1) all communications between the police vehicles and headquarters related to his pursuit and arrest; (2) all records related to the damage sustained by TAC 3; and (3) an *in camera* inspection of Officers Wittevrongel, Roman, and Stinner's personnel files, including any complaints of racial profiling or selective prosecution. (*See* Pet'r's Feb. 13, 2012 Notice of Mot., ECF No. 13-15 at PageID: 379-80; *accord* Pet'r's Mar. 17, 2012 Letter Br., ECF No. 13-15 at PageID: 404-06.)

The PCR court found that Petitioner was not entitled to any of the post-trial requested discovery, and further concluded that Petitioner failed to establish that he received ineffective assistance of counsel. Judge Donohue detailed some of the reasons supporting that decision on the record at Petitioner's August 10, 2012 PCR hearing:

> Let me say at the outset that [Petitioner's] application for discovery in this matter I think is absolutely inappropriate. . . .
>
> You can't say I suspect they're racial profiling and therefore I want to look through their files. There's a balancing test between the public's right to know and an officer's right of privacy.
>
> And before you can get in and have an *in-camera* inspection you have to establish some factual predicate that would lead one to believe that a review was going to produce something.
>
> And to merely say, well he profiled me, therefore he must be profiling others, is not the kind of thing that you can get that with. . . .
>
> With respect to the discovery with whether or not there was one or two more checks of the vehicle, as I recall this even came up at trial, and I think it was argued by Mr. McCormack as part of the

case, the time of the police report or the report that indicated there was a check of the license plates was an hour after the stop. And that is not inconsistent. Those matters are part of an investigation after a file. It doesn't necessarily mean that every transmission becomes the subject of a report.

Every police department doesn't keep *ad infinitum* every radio transmission, does not record every radio transmission. There's no evidence to show that such transmission existed then or existed now.

. . . .

[Petitioner has] made some *pro se* applications regarding cross-racial identification. Identification is really not the *sine qua non* of this case. This case is not about identification. It's about his claims that the officer lied.

It's not a question of whether the officer was able to identify the driver of the vehicle as it went past with the person who was in the driver's seat. Was that the subject of cross-examination. Could that issue have been addressed at the trial.

. . . . The issue is did the police officer lie when they said a man was driving the car. Ultimately we know that the car that passed the officer was involved in an accident. And when the officer investigated at the end and said that's the man at trial who was behind the wheel of the car that's the important part of the case.

. . . . [T]here was sufficient evidence and cross-examination on this issue. This is not an identification case. It's whether the officers are telling the truth.

And as to a cross-racial identification, even if that -- even if you wanted to say that we should ask for cross-racial identifications when a police officer is involved, and that's not the case, you don't get a cross-racial identification when there's a police officer involved with someone who's of a different race. That's a regular citizen. So we don't usually apply cross-racial to those cases. But this is not an identification case.

I saw a man driving the car. The car was chased. He eluded the police. There was an accident. When I got to the car that had crashed the person behind the wheel was a male. It was the same person.

ls that an identification?  I would suggest that it's subject to cross-examination, it's subject to some question.  But the issue is his testimony that the person behind the wheel of the car when it was stopped was confirmed that it was a male.  Not that it was the same person.  That's the importance of this case.  This was not an identification case.  It had to do with the credibility of the police officers.

With respect to the allegations that there was ineffective assistance of counsel, let's deal with the racial profiling issue first.

Even by [Petitioner's] own argument today, after there was an accident there was an eluding of the police.  And after that that car that was eluding struck someone -- struck another vehicle.  Even by that argument it's hard to understand how racial profiling would excuse the conduct of eluding the police.  It just simply does not make sense.

(Aug. 12, 2012 PCR Hr'g Tr. 21-25, ECF No. 13-25.)

In addition to the reasons set forth by the PCR court on the record on August 12, 2012, the PCR court made the following express factual findings in its August 20, 2012 written decision denying PCR:

> 1. On August 22, 2006, at approximately 7:30 p.m., Union County Police Officer Michael Wittevrongel was parked in the Working Gear Store parking lot in a marked police car, monitoring traffic on Route 22 Eastbound.
>
> 2. At this time, Officer Wittevrongel observed a Chrysler Fifth Avenue pass in the left lane of Route 22.  He observed that the driver's door lock was damaged. He further observed a male driver and female passenger.
>
> 3. Officer Wittevrongel testified that he had a clear view of the vehicle.  It was approximately 7:30 p.m., in the summer, light outside, a clear day, and the Officer was as close as 10 feet from the vehicle when it passed.
>
> 4. Officer Wittevrongel ran the rear license plate number and found that it was not registered to any vehicle. He then radioed Officers David Roman and Walter Stinner for assistance.  Officer Wittevrongel pulled out onto Route 22 in pursuit, losing sight of the Chrysler for no more than 30 seconds.

5. He caught up to the Chrysler and observed the other officers pull out from the Lowes parking lot, activate their lights and sirens and signal for [Petitioner] to stop.  Officer Wittevrongel did the same.

6. With the police vehicles in pursuit, the Chrysler drove erratically, speeding, and weaving in and out of traffic.  When Officer Wittevrongel reached the top of the exit ramp, he observed that the Chrysler, which he lost sight of only momentarily, had rear-ended a Saturn at the stop sign at the bottom of the ramp.  The impact forced the Saturn all the way across the street, into a parking lot, where it collided with a tractor trailer.

7. The Chrysler, having sustained heavy front-end damage, was smoking and rolling the wrong way down a one-way street as the driver attempted to exit, despite [the fact] that [the] door would not open.

8. Officer Wittevrongel quickly checked the driver of the Saturn before using his police cruiser to block the Chrysler from moving any further.  Inside that vehicle was [Petitioner], in the driver's seat. Nicole Pittman, [Petitioner's] cousin, was in the passenger seat.

9. [Petitioner,] who was the same person Officer Wittevrongel saw in the driver's seat when he observed the vehicle on Route 22, was placed under arrest.

10. Carol McBride, the driver of the Saturn, sustained injuries to her neck, back and shoulders that left her with pain and unable to drive for more than one year.

(*See* Aug. 20, 2012 Statement of Reasons Denying PCR at Findings of Fact, ECF No. 13-15 at

PageID: 449-50.)

By way of its August 20, 2012 written decision, the PCR court also expressly found, *inter alia*: (1) that "identification was not a critical issue in this case[;]" (2) that "there was ample additional evidence corroborating Officer Wittevrongel's identification of [Petitioner] as the individual driving the Chrysler[;]" (3) "that the Officer [Wittevrongel] observed [Petitioner] in the vehicle [and] was within sight of the vehicle at all crucial times[;]" (4) "that the vehicle did not stop until it crashed[;]" (5) "that Officer Wittevrongel observed [Petitioner] exit the

vehicle[;]" (6) "that the attempted stop of [Petitioner's] vehicle was objectively reasonable because it bore unregistered license plates[;] (7) that "[Petitioner] has not established even one iota of evidence that he was the victim of profiling [and that] even if he did establish this to invalidate the stop, it would not justify his eluding or the assault resulting therefrom[;]" and (8) that [t]he jury would [ultimately] still likely have found [Petitioner] guilty based on his actions subsequent to the stop." (*See id.* at Conclusions of Law, PageID: 450-52.)

In his appeal challenging the PCR court's denial of his PCR petition, Petitioner expressly argued that the PCR court improperly denied Petitioner's post-trial motion for discovery. (*See* Pet'r's Dec. 31, 2013 Br. at Point II, ECF No. 13-14.) Petitioner expounded upon that argument as follows:

> [Petitioner's motion for post-trial] discovery sought, in pertinent part, copies of all communications between police vehicles and headquarters (dispatch/transmissions and MDC) which had been transmitted on the night in question, as well as copies of all records with reference to the damage sustained by [TAC 3], including but not limited to towing and repair records.
>
> According to the [Petitioner's] supporting certification, he emphasized his defense at trial was that he was not the driver of the Chrysler that allegedly eluded police, and that Patrolman Wittevrongel could not possibly have reliably identified him as the driver. According to the officer's testimony, as the Chrysler drove by at approximately 45 miles per hour, he was able to observe damage to the driver's door lock, the absence of a license plate on the front of the car, the existence of a New Jersey license plate on the back of the car, and that there was a male driver and a female passenger. This occurred at approximately 7:30 p.m.
>
> Pretrial discovery which was provided by the State included a computer print-out which showed the license plate was run on the night in question at 8:38 p.m., although the officer's police report did not indicate what time the license plate was run. Trial counsel never questioned the officer regarding the absence of a MDC computer print-out for approximately 7:30 p.m.

[Petitioner] maintained the dispatch and MDC records were relevant to Wittevrongel's credibility with respect to how the events transpired, and whether he could have reliably identified the driver. In this regard, communications between he and dispatch would demonstrate the time he initially observed the vehicle, as well as any observations he made with respect to its condition and the occupants. Such information was crucial to the [Petitioner's] contention that he did not receive adequate legal representation from trial counsel as a result of counsel's failure to confront and impeach the testimony elicited by the State. As a result, it was essential to obtain all dispatch/transmission and MDC records with respect to that evening.

With respect to the damage and towing reports of [TAC 3], that vehicle was operated by Patrolman Stinner with Patrolman Roman as a passenger. According to the [Petitioner's] certification, the Chrysler in which he was riding pulled over on Route 22 after it appeared it was being followed. The TAC 3 vehicle then rammed the Chrysler, which then took off, exiting Route 22 at which time it rear-ended a Saturn on the exit ramp. The TAC 3 vehicle also hit the Saturn, sustaining sufficient front-end damage that had to be towed from the scene. As a result, it was necessary to obtain records of the damage to the vehicle to demonstrate the State's version of the incident, which did not include the ramming of the Chrysler on Route 22 or the hitting of the Saturn on the exit, was inaccurate.

In further support thereof, [Petitioner] emphasized inconsistencies between Patrolman Wittevrongel's testimony, his police report, and the observations of Patrolman Stinner. In addition, contradictions existed between the testimony and report of Wittevrongel and Carol McBride, the driver of the Saturn. As a result, it was essential to obtain the towing and damage reports relating to the TAC 3 vehicle to adversely impact the State's case, which trial counsel had failed to obtain in support of his defense.

(*Id.* at 20-23 (internal citations omitted).)

The Appellate Division provided the following analysis on these claims in its opinion

denying Petitioner's PCR appeal:

[Petitioner] argues his trial attorney was ineffective because he failed to investigate the circumstances of the police chase to support his defenses that his cousin, Nicole Pittman, was the driver of the Chrysler and that the police were actually the cause of the collision with the Saturn on the exit ramp.

We will assume for purposes of the appeal that trial counsel should have pursued discovery of police transmissions during the incident to verify whether any of the officers reported to their headquarters that a man was the driver of the fleeing vehicle. The absence of such a transmission would not have changed the presentations at trial significantly. Officer Wittevrongel's police report did not indicate the gender of the driver that he observed on Route 22, and defense counsel cross-examined him on that omission. The officer testified that he did not include a description because there was no issue in his mind of who the driver was. Furthermore, Officer Stinner testified that he, too, saw a male driver in the Chrysler as it sped away on Route 22. The incident developed quickly into a police chase, and the description of the vehicle rather than the fact that a man was driving would have been the important information to convey to other officers and headquarters.

Only if the police transmissions were to include a statement by one of the officers that a woman was driving the fleeing vehicle would it have helped the defense's contention that Nicole Pittman rather than [Petitioner] was the driver. However, the police released Nicole Pittman on the scene shortly after the crash. There is no credible likelihood that she would have been released if an officer had seen a woman driving the Chrysler during the chase and made such a transmission to police headquarters.

[Petitioner] alleges that the police car driven by Officer Stinner had rammed the Chrysler earlier on the shoulder of Route 22 and thus caused the Chrysler to flee and eventually collide with the Saturn. We will assume that [Petitioner's] trial attorney should have attempted to obtain discovery of any repair records of the police vehicle. Even if [Petitioner's] version is true that Stinner's vehicle rammed the Chrysler, it would not justify [Petitioner's] fleeing on Route 22 at high speed for two or three miles, then suddenly crossing from the left lane to the exit ramp on the right, and ramming the car of an innocent citizen at the bottom of the ramp.

The investigation that [Petitioner] contends his attorney should have done might theoretically have produced additional impeachment evidence to challenge the accuracy and completeness of the officers' trial testimony, but it would not have created a defense against the allegations of dangerous eluding and the aggravated assault of an innocent driver in the course of the eluding.

[Judge Donohue] issued a written decision by which he addressed and rejected point by point each of [Petitioner's] allegations on the

> PCR petition.  We agree that [Petitioner's] allegations were not
> sufficient to call into question the essential evidence in the
> prosecution's case or the strength of that evidence with respect to
> [Petitioner's] criminal conduct during the incident.
>
> Furthermore, with the testimony of two officers that they saw a male
> driver, followed by [Petitioner] being found immediately after the
> crash in the driver's seat, this was not a case where identification
> was an issue.  There was no basis in the evidence to instruct the jury
> about the trustworthiness of cross-racial identification of strangers .
> . . .
>
> The PCR petition did not proffer any evidence that Nicole Pittman
> was the actual driver of the vehicle rather than [Petitioner].

*Pittman*, 2014 WL 8086797, at *3-4 (N.J. Super. Ct. App. Div. Mar. 9, 2015).

### ii.     The PCR Court's Denial of Petitioner's Post-Trial Discovery Requests

Petitioner challenges the PCR's court's denial of his discovery motion requesting copies

of all police communications related to his pursuit and arrest, all records related to the damage

sustained by TAC 3 in the course of that pursuit, and an *in camera* inspection of Officers

Wittevrongel, Roman, and Stinner's personnel files.  (*See* Am. Pet. at Grounds One and Two,

ECF No. 5.)

Petitioner's claim that the PCR court improperly denied his post-trial discovery motion,

however, is not, in and of itself, cognizable on federal habeas review.  Indeed, Section 2254

limits the federal courts' ability to grant relief from a state court judgment "only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a).  "Thus, the federal role in reviewing an application for habeas corpus is

limited to evaluating what occurred in the state . . . proceedings that actually led to the

petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into

the habeas calculation."  *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998), *cert. denied*,

526 U.S. 1065 (1999).  In other words "alleged errors in collateral proceedings . . . are not a

proper basis for habeas relief from the original conviction.  It is the original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004), *cert. denied*, 544 U.S. 1063 (2005); *see also Thomas v. Miner*, 317 F. App'x 113, 115 (3d Cir. 2008) (citing *Hassine*, 160 F.3d at 954); *Williams v. D'Ilio*, No. 3:15-cv-1720 (AET), 2016 WL 1436272, at *7 (D.N.J. Apr. 11, 2016) (PCR court's failure to grant § 2254 habeas petitioner's motion for post-trial discovery of trial witnesses' phone records "is not cognizable in federal habeas.").  As such, Petitioner's allegations regarding the PCR court's discovery rulings fail to provide a basis for this Court to grant him habeas relief.

### iii.    Officer Wittevrongel's Purportedly False Testimony

Petitioner argues that Officer Wittevrongel provided false testimony at trial regarding the time at which he initially checked the license plate of the Chrysler which Petitioner was driving. (*See* Am. Pet. at Grounds One and Two, ECF No. 5.)  More specifically, Petitioner claims "[Officer Wittevrongel] didn't check the license plate at 7:30pm like he testif[ied] to[;] the 'MDC' computer show[s] it was 8:38pm."  (*Id.* at Ground Two.)  Petitioner further claims "that the judge, prosecutor, and the officers in [his] case cover[ed this fact] up."  (*Id.*)

"The Supreme Court has long held that the state's knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment." *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) (citing, *inter alia*, *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  Consequently, "a conviction obtained by the knowing use of perjured testimony . . . must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976), *holding modified by United States v. Bagley*, 473 U.S. 667 (1985).  "[T]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected

when it appears." *Giglio*, 405 U.S. at 153 (quoting *Napue*, 360 U.S. at 269; *see also Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 146 (3d Cir. 2017); *Lambert*, 387 F.3d at 242.  To obtain habeas relief on such a claim, Petitioner must show: "(1) [that a witness] committed perjury, (2) the [State] knew or should have known that the testimony was false, (3) the false testimony was not corrected, and (4) there is a reasonable likelihood that the perjured testimony could have affected the judgment of the jury." *Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 146 (3d Cir. 2017).

The transcript of trial proceedings confirms that Officer Wittevrongel testified that he observed Petitioner's vehicle at approximately 7:30pm on August 22, 2006, that he checked the vehicle's license plate on the computer in his police car, that the license plate was "not on file[,]" and that he relayed this information to Officers Stinner and Roman prior to Petitioner's vehicle crashing.  (*See* Sept. 26, 2007 Trial Tr. 9-11, ECF No. 13-21.)  The record also confirms that Petitioner received a document in the course of pre-trial discovery demonstrating that his license plate was checked at 8:38pm.  (*See*, *e.g.*, Pet'r's Reply, ECF No. 15 at PageID: 687.)  The PCR court found that these two facts, when considered together, do not necessarily lead to the conclusion that Officer Wittevrongel provided false testimony during trial.  Indeed, the PCR court explained that "[the fact that Officer Wittevrongel's report] indicated there was a check of the license plates [] an hour after the stop . . . is not inconsistent [with his testimony that he checked Petitioner's license before that time].  Those matters are part of an investigation after a file.  It doesn't necessarily mean that every transmission becomes the subject of a report as Petitioner claims."  (Aug. 12, 2012 PCR Hr'g Tr. 22-23, ECF No. 13-25.)  In other words, the PCR court found it entirely plausible that Officer Wittevrongel checked Petitioner's license on more than one occasion, notwithstanding that the evidence at trial showed only that the license

plate was checked at 8:38pm.  In that respect, this Court notes that "[d]iscrepancy [in a witness's testimony] is not enough to prove perjury."  *Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004).

The PCR court thereafter made an express factual finding that "Officer Wittevrongel ran the license plate number [on the Chrysler] and found it was not registered to any vehicle.  He *then* radioed Officers [Roman and Stinner] for assistance."  (*See* Aug. 20 2012 Statement of Reasons Denying PCR at Findings of Fact ¶ 4, PageID: 449) (emphasis added.)  The Appellate Division did not expressly accept, reject, or otherwise rule on the propriety of this factual finding in its opinion affirming the PCR court's denial of Petitioner's PCR petition; instead, it simply noted that "[Judge Donohue's written decision] addressed and rejected point by point each of [Petitioner's] allegations on the PCR petition."  *Pittman*, 2014 WL 8086797, at *4.  The PCR court's factual determination on this issue is therefore entitled to deference from this Court. *Breakiron*, 642 F.3d at 131.

The Appellate Division, did, however, expressly find that Petitioner's allegations regarding the discrepancies between Officer Wittevrongel's testimony and the police records presented at trial "were not sufficient to call into question the essential evidence in the prosecution's case or the strength of that evidence with respect to defendant's criminal conduct during the incident."  *Pittman*, 2014 WL 8086797, at *4.  The Appellate Division further found that additional investigation "might theoretically have produced additional impeachment evidence to challenge the accuracy and completeness of the officers' trial testimony, but it would not have created a defense against the allegations of dangerous eluding and the aggravated assault of an innocent driver in the course of the eluding."  *Pittman*, 2014 WL 8086797, at *4. Petitioner has not presented this Court with any evidence which rebuts these findings.

Petitioner, likewise, has failed to present any evidence which even remotely substantiates his conclusory allegation that the trial judge, assistant prosecutor, and officers who testified at trial somehow colluded to ensure that Officer Wittevrongel's allegedly false testimony would stand.  Petitioner's factually-unsupported assertion that the State knowingly relied on the allegedly perjured testimony of Officer Wittevrongel to obtain its conviction against him fails to provide a basis to award him habeas relief.

The Court agrees with the Appellate Division that ultimately, Petitioner's allegations regarding Officer Wittevrongel's trial testimony are "not sufficient to call into question the essential evidence in the prosecution's case or the strength of the evidence with respect to defendant's criminal conduct during the incident." *See Pittman*, 2014 WL 8086797, at *4. Petitioner is therefore not entitled to habeas relief on this claim.  *See Williams v. Ricci*, No. 2:09-cv-1822 (DRD), 2015 WL 333417, at *6 (D.N.J. Jan. 22, 2015) (denying habeas relief on petitioner's claim that prosecutor knowingly allowed a police officer to provide false testimony where state court found overwhelming evidence of petitioner's guilt and the allegedly false testimony was not a key element of the State's case); *see also Williams v. D'Ilio*, No. 3:15-cv-1720 (AET), 2016 WL 1436272 (D.N.J. Apr. 11, 2016) ("Petitioner has not established that [witness] actually perjured herself at trial; therefore, he is not entitled to habeas relief on that ground.").  As such, Petitioner's allegations regarding the allegedly false testimony Officer Wittevrongel fail to provide a basis for this Court to grant him habeas relief.

### iv.    Petitioner's Assertion That He Was Impermissibly Stopped

Petitioner appears to assert that he is entitled to habeas relief because there was no legitimate reason to stop the vehicle he was driving.  (*See* Am. Pet. at Grounds One and Two, ECF No. 5.)  More specifically, Petitioner appears to claim that the police officers who pursued

him in the Chrysler would never have attempted to stop that vehicle but for their utilization of

racial profiling.  (*Id.*)  Although Petitioner fails to reference any specific constitutional provision,

it is clear that this claim is rooted in Petitioner's Fourth Amendment right "to be secure . . .

against unreasonable searches and seizures."  U.S. Const. amend IV.  *See Ingram v. Phelps*, No.

CIV.A.07-12-GMS, 2008 WL 4365945, at *1 (D. Del. Sept. 24, 2008) (Petitioner alleging

Fourth Amendment violation on habeas review after claiming during state court PCR

proceedings that "the investigatory stop and detention of [him] was the result of racial

profiling.").  It also appears that Petitioner may additionally be attempting to claim that he was

subjected to selective enforcement in violation of his rights to equal protection under the

Fourteenth Amendment.  *See*, *e.g.*, *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-

Div. of State Police*, 411 F.3d 427, 440-41 (3d Cir. 2005).

        During PCR proceedings, Petitioner claimed that there was an insufficient basis to stop

the Chrysler based on Officer Wittevrongel's initial observations of that vehicle, and that the

officer sought to stop the vehicle based on Petitioner's race.  (*See*, *e.g.*, Pet'r's Feb. 18, 2012

Cert. ¶ 6, ECF No. 13-15 at PageID: 385-86.)  The PCR court supported its rejection of this

argument with a litany of factual findings showing why it was objectively reasonable for the

police officers to attempt to stop Petitioner's automobile.  (*See*, *generally*, Aug. 20, 2012

Statement of Reasons Denying PCR, ECF No. 13-15 at PageID: 449-452.)  Indeed, the PCR

court expressly found, *inter alia*, that Petitioner's vehicle "drove erratically, speeding, and

weaving in and out of traffic."  (*Id.* at Findings of Fact ¶ 6, PageID: 449.)  The PCR court further

noted that Petitioner failed to present "any objective evidence demonstrating the existence of

selective enforcement or racial profiling[,]" and further found that "even if he did establish [that

he was racially profiled], it would not justify his eluding or the assault resulting therefrom." (*Id.* at Conclusions of Law ¶¶ 11, 13, PageID: 451-52.)

In light of the foregoing, it is clear (i) that Petitioner received the opportunity to – and in fact did – argue to the state courts that there was an insufficient basis to stop the Chrysler based on Officer Wittevrongel's initial observations of that vehicle; and (ii) that Petitioner's habeas petition now seeks relief from this Court based on Petitioner's assertion that his "Fourth Amendment claims were decided incorrectly or incompletely by the New Jersey courts." *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See id.* at 495-96.  As explained by the Third Circuit in *Hubbard v. Jeffes*, 653 F.2d 99 (3d Cir. 1981), *Stone* ultimately stands for the broader proposition that "when a state prisoner raises a Fourth Amendment violation in a habeas petition, a federal court may not consider the merits of the claim if the state tribunal had afforded the petitioner 'an opportunity for a full and fair litigation' of his claim." *Id.* at 102-03 (citing *Stone*, 428 U.S. at 494); *see also Marshall*, 307 F.3d at 82 ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar") (citations omitted).

In accordance with *Stone* and its progeny, and in light of the facts detailed above, it is clear that this Court is now barred from considering Petitioner's Fourth Amendment claims regarding the Union Township police officers' purported lack of a legitimate basis to stop the vehicle he was driving in this § 2254 proceeding.  *See Gilmore v. Marks*, 799 F.2d 51 (3d Cir.

1986); *Hubbard*, 653 F.2d at 103; *see also Ingram*, 2008 WL 4365945, at *4.  It is less clear, however, whether *Stone* also precludes this Court from considering the merits of Petitioner's additional Fourteenth Amendment equal protection claim.

In *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court held that "[a]n automobile stop is . . . subject to the constitutional imperative [under the Fourth Amendment] that it not be 'unreasonable' under the circumstances.  As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Id.* at 810.  *Whren* holds that "the constitutional reasonableness of traffic stops [does not depend] on the actual motivations of the individual officers involved[,]" and thus, the Fourth Amendment is not violated "where the search or seizure is based upon probable cause."  *Id.* at 813, 817.  In other words, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.  *Id.* at 813.  *Whren*, however, also states – without elaboration – that "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment."  *Id.*

*Whren* does not discuss the import of *Stone*, and it does not appear that the Supreme Court has ever subsequently addressed the interplay of these two decisions.  This Court therefore finds itself without definitive authority from the Supreme Court regarding whether the officers' purported violation of Petitioner's Fourteenth Amendment equal protection rights receive independent consideration and analysis, or whether this claim is also subsumed by *Stone*.  This Court is likewise unable to locate definitive guidance from the Third Circuit on this particular issue.  *Compare*, *e.g.*, *Gibson*, 411 F.3d at 440-41 (stating, in opinion considering propriety of dismissal of a plaintiff's civil rights lawsuit, that "if a person can demonstrate that he was subjected to selective enforcement in violation of his Equal Protection rights, his conviction will

be invalid."); *and United States v. Delfin-Colina*, 464 F.3d 392, 397, 397 n.5 (3d Cir. 2006)

(noting that the Third Circuit "has not directly addressed the question whether *Whren* has

changed the law of traffic stops" and that its "*Gibson* opinion did not discuss *Whren*").

 Decisions of other federal courts persuade this Court that it is precluded from

independently considering Petitioner's allegation of racial profiling as a stand-alone habeas

claim. *See United States v. Stone*, 225 F.3d 647 (2d Cir. 2000) (criminal defendant's claim "that

the police officers' initial surveillance of him was predicated on racial stereotyping" did not alter

the court's Fourth Amendment analysis) (citing *Whren*, 517 U.S. at 813); *Williams v. McKee*,

No. 1:08-cv-62, 2009 WL 2982757 (W.D. Mich. Sept. 14, 2009) (finding that the illegal search

and seizure claim raised by a § 2254 habeas petitioner who averred that he was stopped as a

result of racial profiling was barred from substantive consideration pursuant to *Stone*).  This is

particularly so because Petitioner previously raised the issue of racial profiling during his state

court proceedings. *See*, *e.g.*, *Cobbs v. Pollard*, No. 08-CV-704-BBC, 2009 WL 1604988, at *4

(W.D. Wis. June 5, 2009) (§ 2254 habeas petitioner's contention "that the traffic stop violated

his Fourteenth Amendment equal protection rights because it was racially motivated" was barred

under *Stone* where "his claim that he was subject to racial profiling was a central part of the

Fourth Amendment claim that he raised in state court.").[8]

---

[8]  To the extent this Court is incorrect in finding that its independent consideration of Petitioner's Fourteenth Amendment equal protection claim is not barred under *Stone*, this Court would nonetheless find that Petitioner's factually unsupported allegation of racial profiling fails to provide a basis to grant him habeas relief.  Petitioner has not presented any facts upon which this Court could conclude or reasonably infer that he was the victim of racial profiling.  The Court is likewise unable to locate any basis in the record which suggests otherwise.  Petitioner has similarly failed to provide any legal authority – convincing or otherwise – upon which this Court could find that he is entitled to habeas relief as to this alleged violation.

In light of the foregoing considerations, Petitioner's claims regarding the purported absence of a valid basis to pull over the Chrysler he was driving – including Petitioner's claim that he was the victim of impermissible racial profiling – fail to provide a basis for this Court to grant him federal habeas relief.

### v.     Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right.  As reasonable jurists could not disagree with this Court's resolution, the Court shall deny Petitioner a certificate of appealability.

## V.     CONCLUSION

For the reasons stated above, the habeas petition is denied.  A certificate of appealability shall not issue.  Petitioner's request for the appointment of *pro bono* counsel is denied.  An accompanying Order will be entered.


July 10, 2018                                            s/ John Michael Vazquez
Date                                                         JOHN MICHAEL VAZQUEZ
                                                               U.S. District Judge